STATE OF IOWA, Appellee, v. HERBERT HERRING, Appellant.

**PARENT AND CHILD:** Willful Nonsupport—Willfulness Negatived.
1 A father may not be said to willfully fail to support his infant child in the custody of its mother when it is made to appear that he had extended to the mother the privilege of drawing checks on his bank account for the support of herself and child, and that the mother had declined to do so.

**PARENT AND CHILD:** Willful Nonsupport—Destitution—What Constitutes.
2 A child may be in a ''destitute'' condition, within the meaning of Sec. 13230, Code of 1924, even though charitable people have voluntarily taken it into their homes and gratuitously supported it.

Headnote 1:   29 Cyc. p. 1679.   Headnote 2:   29 Cyc. p. 1677.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

NOVEMBER 24, 1925.

THE defendant was indicted for a violation of Section 4775-a, Code Supplement of 1913 (Section 13230, Code of 1924), in that, as was alleged, without good cause he willfully neglected to maintain and provide for his legitimate child under sixteen years of age, such child being in a destitute condition. Upon a trial he was convicted, and from the judgment upon the verdict he appeals.—*Reversed.*

*J. M. Otto* and *Walter M. Davis,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

VERMILION, J.—I. The proposition most earnestly urged upon our attention is the sufficiency of the evidence to sustain the verdict. There is no serious dispute about the principal facts. The appellant and the mother of his child were married on March 22, 1922. The child was born October 26, 1922. In October, 1923, the wife commenced an action for divorce, and secured a decree on January 10, 1924. The divorce decree awarded the custody of the child to the mother, and required appellant to pay to the clerk of the court, on or before the 15th of each month, commencing January 1, 1924, $30 per month for the support of the child. The appellant was arrested in the latter part of March, 1924, under an information charging him with child desertion, and the indictment was returned May 9, 1924.

1. PARENT AND CHILD: willful nonsupport: willfulness negatived.

After the marriage, the appellant and his wife resided with his father and mother in Iowa City for some five weeks, when he went to Pontiac, Illinois, to work. Later, and up to the time of his arrest on this charge, he was employed at Streator, Illinois. About December 30, 1922, appellant visited at his father's home for two or three days. On March 7, 1923, his wife and child went to Streator; and they lived together there for about a month. The wife then returned to Iowa City with the child, and lived with appellant's father and mother until in May, 1923, when she took the child and went to her father's house, where she has since resided. There is some dispute in the testimony as to how or why the wife came to leave Streator. She testified that he ordered her to go home; that she asked him where he

expected her to go, and what she was supposed to do, and he told her he did not care where she went, and she could go to her folks or to his folks; that he would not talk to her, and she could not find out why he wanted her to go; that they had no difficulty till he came home drunk one day; that that started it. The appellant denied being drunk, but admitted that on one occasion he had been drinking, and it made him sick, and his wife complained about it. He also testified that, while she was at Streator, she was complaining, and wanted to go back home.

The wife testified, in substance, that, when she left Streator, he gave her $25, and offered her more, and she told him she did not need any more at that time; that he promised to write the next morning; that, after she arrived in Iowa City, she wrote to him; that she wrote to him, and never heard from him at all; that, after waiting three weeks, she went to her father's; that, after she left Streator, he did not send her any money until March, 1924. This was after the divorce, and appellant then sent her $15, and a few days later $30, both of which amounts she refused to accept, apparently because it was not the full amount then due from him for the support of the child under the divorce decree, and was not paid through the clerk of the court.

The appellant testified that, at the time his wife left Streator, he told her that, if she needed money, she could write checks on his account in a bank at Streator. This was not denied by the wife. She had drawn checks on the account while they lived together in Streator, to pay family expenses, but drew none for the support of herself or child after leaving there. Appellant testified that he thought there was never less than $50 in his bank account.

The child was of such tender years and so dependent at that time upon the care of its mother, with whom appellant appears to have been content to leave it, that their fortunes are not to be distinguished, and his treatment of the mother prior to the divorce necessarily included the child.

In view of the amount of money admittedly sent to the wife after the birth of the child and before she went to Streator, we are clear that the conviction cannot be sustained on the theory that, during that time, appellant willfully failed to provide for

the child. It cannot, of course, be contended that he was guilty of the offense while the husband and wife were living together at Streator.

·The wife admits that, on her departure from Streator, appellant offered her more money than she would accept, and did not deny that he told her, if she needed money, to write checks on his bank account. The appellant is charged with willfully refusing to support his infant child. ' Whatever may be thought of his conduct in failing to write to his wife following this separation, and in not sending money to her, he is not to be held criminally responsible for failing to support his child, if he made provsion therefor and the wife refused, from whatever motives, to avail herself of the permission given her to draw checks on his account. The only question at this point is whether the testimony as to the amount of money in the account shows that the provision made was such as to relieve him of the charge of willful desertion of his child in a destitute condition. It is true, he was then under obligation to support his wife also, and whatever provision was made was for both the wife and child. But we are disposed to say that permission to draw on an account, which is shown to have never had less than $50 in it, in view of the wife's failure to draw upon it at all, and in the absence of evidence that the fund so on deposit was exhausted, negatives the charge of willful desertion during the time immediately preceding the divorce. The evidence shows that the wife had, at all times during that period, at least $50 of appellant's money available for the support of the child, had she seen fit to use it.

We cannot, however, agree with counsel for appellant that criminal responsibility for the failure to support his child could not be found on the ground that it was not in a destitute con-

2. PARENT AND CHILD: willful nonsupport: destitution: what constitutes.

dition, merely because his parents, or the mother's parents, did not permit it to be in actual want, ''naked or unhoused, or in a condition of actual starvation.'' *State v. Weyant,* 149 Iowa 457. There was no claim that appellant had made any arrangements with his parents for the support of the child, upon which it, or the mother for it, could rely. The case is clearly distinguishable in this respect from *State v. Baugh,* 198 Iowa 897.

After the divorce was granted, it is admitted that appellant sent his wife $45 of the $90 which would have been due from him, at the time of his arrest, for the support of the child, under the terms of the decree. Again, the wife refused, for no sufficient reason, to avail herself of the provision actually made by appellant for his child. He is not to be held criminally responsible merely because he did not pay the money into the hands of the clerk, nor because he did not make payment at the time or in the amount the decree required. Criminal responsibility must be grounded on his willful failure to support his child,— not on his failure to comply with the terms of the decree. *State v. Manley,* 197 Iowa 46. The $45 was all sent to the wife in the month preceding his arrest. In view of the age of the child, and that its care was committed to the mother, we think there was no sufficient evidence, either of a willful desertion of the child by appellant or that the child was in a destitute condition following the divorce. Since the judgment must be reversed for insufficiency of the evidence to support the conviction, it is unnecessary to consider the other errors assigned.—*Reversed.*

FAVILLE, C. J., and EVANS, STEVENS, and ALBERT, JJ., concur.