(113 So. 480)

**JOHNSON v. STATE.** (3 Div. 554.)

Court of Appeals of Alabama.   June 30, 1927.

A. G. Seay, of Troy, for appellant.

Charlie C. McCall, Atty. Gen., **for the** State.

Brief did not reach the Reporter.

SAMFORD, J. ▇ There was a plea attacking the constitutionality of the Act of October 2, 1920, Acts Sp. Sess. 1920, p. 76 et seq., creating juvenile courts in counties having a designated population. Since the decision in Reynolds v. Collier, 204 Ala. 38, 85 So. 465, statutes of a similar nature have been held constitutional.

This prosecution is brought under section 4480 of the Code of 1923, which provides, among other things, that:

"Any parent who shall without lawful excuse * * * fail to provide for the support and maintenance of his, or her, child, or children, under the age of eighteen years, whether such parent have custody of such child, or children or not, * * * they being then and there in destitute or necessitous circumstances, shall be guilty of a misdemeanor and, on conviction thereof, shall be punished by a fine of not exceeding $100.00, or be sentenced to a term in the county jail, or at hard labor for the county for a period of not more than twelve months, or the fine may be in addition to either the sentence to jail or to hard labor."

The defendant was found guilty in the juvenile court of Montgomery county, appealed to the circuit court, where he was again convicted, and from the latter judgment is this appeal.

▇ It was argued in brief that the cause was still pending in the circuit court of Pike county, but there is no plea sufficiently raising this question, and hence we do not pass upon it on this appeal.

The defendant and the present Mrs. Prentiss were husband and wife. There were two children born to them and now living with the mother in Montgomery, Ala. Divorce was granted these parents out of the circuit court at Troy, at the suit of the wife, and she was by the decree given the custody and control of the children, who were and are under 18 years of age. No alimony was asked or granted in the divorce proceedings and no allowance made for the maintenance of the children. The decree was final, in so far as such decrees may be. The wife left Troy, came to Montgomery, leaving the children with her sister, Mrs. Brown, and this defendant contributed $25 each month to their support; the mother contributing nothing while the children were in Troy. The mother being away and the children having no home, defendant took them to his home in Brundidge and cared for them until July, 1925, when the mother remarried and wrote to defendant that she was now able to support the children and wanted them sent to her. In this letter the wife used this expression:

"I certainly appreciate your care and kindness to them and feel that you have done your share wonderfully—I hope to do mine now."

Defendant sent the children to her, since which time he has ceased contributing to their support. It is shown by the evidence that the children are now living with the mother and her present husband, and are being supported by them. They are as nicely dressed as the other children in the neighborhood, have plenty to eat, and are in school. In April, 1926, the wife filed a petition in the circuit court at Troy asking that defendant be required to contribute to the support of the children, and in May defendant filed a cross-petition asking for the custody of the children. These petitions are still pending and undetermined. These two petitions recognized the continued jurisdiction of the circuit court of Pike county, to the extent of the relief sought. The prosecution here is at the instance of the former wife.

▇ The liability of the father to support his minor children is recognized both under the common law and by the decisions of this court. Payne v. Graham, 20 Ala. App. 439, 102 So. 729; Higgenbotham v. State, 20 Ala. App. 476, 103 So. 71; Cooley v. Stringfellow, 164 Ala. 467, 51 So. 321.

▇ By a majority of the well-considered cases, it is declared that the liability of the father continues after divorce and an award of the custody to the mother without provision for support of the children having been provided therein. There are, however, many well-considered cases adopting a contrary rule. 19 Corpus Juris, 353 (81)c et seq. The circuit court at Troy sitting in equity still has jurisdiction to make the proper award and order affecting these children. 19 Corpus Juris, 357, par. 818; 9 R. C. L. 480, par. 296. But this primary liability to support the children after divorce is civil and runs in favor of the party having been awarded the custody and control of the children, whether it be the divorced wife or a third person. 9 R. C. L. p. 479, par. 295. This is a liability which may not be determined in this proceeding as between the husband and wife. If the defendant is to be relieved of liability for the support of his children, or if he seeks the custody of his children, his remedy is not here, but still rests with the circuit court at Troy sitting in equity.

▇ This action of the juvenile court does not oust the original jurisdiction of the circuit court in equity. The decree of the juvenile court is of necessity temporary and limited to the time embraced by provisions of law and must ultimately yield to such decree as may be rendered in the circuit court at Troy, which is superior. Ex parte Jackson, 212 Ala. 496, 103 So. 558.

▇▇ The duty sought to be enforced in this prosecution is not the obligation running

to the mother, but is a duty running to the state that defendant support his own children lest they become a charge upon the public. In making it a public offense for a man not to support his children or to neglect them, it must be made to appear beyond a reasonable doubt that his act is done "without lawful excuse" or with "willful neglect." Do the facts in this case justify any such conclusion? It is admitted that the children are receiving the care and attention usual to children in their station in life. They are living with the mother and her present husband. "They had clothing to wear and were getting plenty to eat. They were as nicely dressed as other children in the neighborhood, and they weren't in want for anything to eat. They were in need of medical attention very seriously. They were in school at that time. It was my daughter that needed medical attention; that was an adenoid operation. * * *" The foregoing is from the testimony of the mother. It appears without dispute that after the granting of the divorce in June, 1923, the mother left the children in Troy, with her sister, and came to Montgomery, contracted the dope habit, and was sent to the hospital in Tuscaloosa, where she stayed until she was discharged. She returned to Montgomery, and in March, 1925, she contracted her present marriage. While the children were in Troy defendant contributed to their support, and when the mother was sent to Tuscaloosa defendant took the children to his home in Brundidge, Ala., where he supported them and kept them until after the end of school in 1925, when in response to a letter from the mother, telling him how wonderful he had been in taking care of the children, that he had done his part, that she was now able to take care of them and do her part, and requesting that the children be sent her, defendant sent the children to the mother, after telling her that he would take care of them if he was allowed to keep them. So far as defendant knew, the children were being cared for by the mother in accordance with her statement in the letter. The foregoing facts are without dispute, and therefore the question of whether the defendant has willfully neglected his children within the meaning of the statute becomes a question of law rather than of fact.

This statute was never intended to make the criminal law an instrument for the enforcement of a civil liability in favor of the mother nor indeed could it do so under the Constitution. Its purpose is to protect the public. When a man has children who by his own contract or by order of the court have been placed in the custody of a third person who agrees to care for and support them, and so far as he knows such children are being so cared for, it cannot be said that he has willfully neglected them. If A sends his minor children to B, under an agreement, either expressed or implied, that B will support them, and B does so, A cannot be convicted on a charge of desertion or willful neglect, although a civil obligation may run to B as against A. So, in this case, the children are not being neglected, nor are they in want. Whatever liability there is runs to the mother as against defendant on his common-law duty to support his children, but under this evidence he cannot be convicted of willful neglect.

Under the facts and the law, the judgment rendered is erroneous, and is therefore reversed and the cause is remanded.

Reversed and remanded.